IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:15-CV-7-KS

| | |
|---|---|
| BETTY FAYE BALDWIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court pursuant to Fed. R. Civ. P. 12(c) on the parties' cross motions for judgment on the pleadings [DE # 29 & 31], the parties having consented to proceed pursuant to 28 U.S.C. § 636(c). Plaintiff Betty Faye Baldwin filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for a period of disability, disability insurance benefits and supplemental security income. The parties have fully briefed the issues, and the pending motions are ripe for adjudication. On November 18, 2015, the court held oral argument in the matter. The court has carefully reviewed the administrative record and the motions and memoranda submitted by the parties and considered the arguments of counsel. For the reasons set forth below, the court grants Plaintiff's Motion for Judgment on the Pleadings, denies Defendant's Motion for Judgment on the Pleadings and remands the matter to the Commissioner for further proceedings.

## STATEMENT OF THE CASE

Plaintiff applied for a period of disability and disability insurance benefits and supplemental security income on October 25, 2007, alleging disability beginning April 25, 2002. (Tr. 92-95, 223, 259.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (Tr. 92-95.) On April 5, 2010, a hearing was held before Administrative Law Judge Edward T. Morriss ("ALJ"), who issued an unfavorable ruling on May 28, 2010. (Tr. 99-106.) The Appeals Council granted Plaintiff's request for review and remanded the case, directing the ALJ to: (1) "give further consideration to the treating and non-treating sources' opinion[s] . . . and explain the weight given to such opinion evidence"; (2) "further evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to the evaluation of symptoms"; (3) "give further consideration to the claimant's maximum residual functional capacity during the period at issue and provide rationale with specific references to evidence of record in support of assessed limitations"; and (4) "[i]f warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations of the claimant's occupational base." (Tr. 114.) On March 21, 2013, a second hearing was held before the same ALJ, who issued an unfavorable ruling on May 15, 2013. (Tr. 20-32.) Plaintiff's request for review by the Appeals Council was denied, making the ALJ's decision the final decision of the Commissioner. (Tr. 1.) Plaintiff now seeks judicial review of the final administrative decision.

## DISCUSSION

### I.  Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings

and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "'In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner].'" *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997). ). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler,* 715 F.2d 148, 150 (4th Cir. 1983).

**II.    Disability Determination Process**

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of the Soc. Sec.*

3

*Admin.*, 174 F.3d 473, 74 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.*

### III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Act. (Tr. 31-32.) At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since April 25, 2002. (Tr. 22.) Next, he determined that Plaintiff had the following severe impairments: "osteoarthritis; mood disorder; and degenerative joint disease of the bilateral knees." (Tr. 22.) Additionally, the ALJ determined Plaintiff had the following non-severe impairments: diabetes mellitus, hypertension, hypercholesterolemia, obesity, sarcoidosis, diverticular disease/gastritis, plantar fasciitis, and right hand pain with associated weakness. (Tr. 22-24.) At step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 24-26.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had the capacity to perform medium work "except she is limited to understanding, remembering, and carrying out simple instructions." (Tr. 26.) The ALJ further determined that Plaintiff could not perform past relevant work but, based upon her age, education, work experience and RFC, is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (Tr. 30-31.)
4

## IV. Plaintiff's Contentions

Plaintiff challenges the Commissioner's final decision denying benefits on a single ground. Plaintiff contends that the ALJ improperly evaluated medical opinions of Plaintiff's treating physicians and other opinion evidence from non-treating, non-examining physicians.

An ALJ "is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996). An ALJ must further "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96–8p, 1996 WL 374184, at *7 (Jul. 2, 1996). As part of this consideration and explanation, an ALJ must evaluate all medical opinions in the record. 20 C.F.R §§ 404.1527(b) & (c), 416.927(b) & (c); *see also Monroe v. Colvin*, No. 7:13-CV-74-FL, 2014 WL 7404136, at *16 (E.D.N.C. Dec. 30, 2014). Medical opinions are "statements from physicians . . . or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Controlling weight will be given to "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) [if it] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Craig*, 76 F.3d at 590.

If an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must then determine the weight to be given the treating physician's opinion by applying the following factors: (1) the length of the treatment relationship and the frequency of

5

examinations; (2) the nature and extent of the treatment relationship; (3) the evidentiary support for the physician's opinion; (4) the consistency of the opinion with the record as a whole; and (5) whether the physician is a specialist in the field in which the opinion is rendered. 20 C.F.R. §§ 404.1527(c)(2)–(5), 416.927(c)(2)-(5); *see also Parker v. Astrue*, 792 F. Supp. 2d 886, 894 (E.D.N.C. 2011).

Here, on April 15, 2010, Plaintiff's treating physician of almost thirty years, Dr. Thigpen, opined that Plaintiff could not perform sedentary work based on his medical findings. (Tr. 1092-97.) He indicated that Plaintiff's symptoms included shortness of breath, dyspnea with exertion and back pain. (Tr. 1092.) He also stated that Plaintiff was not a malingerer. (Tr. 1093.) Moreover, on March 25, 2010, Dr. Thigpen wrote a letter in which he stated that pulmonary functional tests were done on March 8, 2010, and the "[f]indings are consistent with a minimal obstructive defect and she has three issues with her lungs, obstructive airway disease, which is minimal, and mild restricted lung disease, and as well as significant interstitial lung disease as represented by the diffusion capacity been reduced by 14%." (Tr. 1098.) The pulmonary functional analysis supports Dr. Thigpen's letter and provides that "[t]here is a minimal obstructive lung defect," airway obstruction, "a mild restrictive lung defect," and "a moderate decrease in diffusing capacity." (Tr. 1100.)

Medical advice opinions were also provided by three non-examining, state-agency consultants. On June 9, 2006, Dr. William Robie opined that Plaintiff was limited to light work with occasional balancing and that Plaintiff should avoid exposure to fumes odors, dusts, gases, poor ventilation, as well as hazards. (Tr. 491-94.) Dr. Robie also noted that Plaintiff's primary diagnosis was sarcoidosis with a secondary diagnosis of hypertension. (Tr. 490.) Dr. Robie's

6

opinion also took into account Dr. Thigpen's November 11, 2004, determination that Plaintiff was unable to return to work. (Tr. 496.)

On November 7, 2007, Dr. Jessica Veasey provided a medical advice opinion noting that Plaintiff's primary diagnosis was arthritis and her secondary diagnosis was diabetes mellitus. (Tr. 815.) Dr. Veasey opined that Plaintiff was limited to medium work with occasional climbing of ramps, stairs, ladders, ropes, and scaffolds, and occasional balancing. (Tr. 816-17.) Dr. Veasey indicated that Plaintiff should avoid exposure to fumes, odors, dusts, gases, and poor ventilation because of her history of asthma. (Tr. 819.) Dr. Veasey did not consider any treating or examining source opinions in reaching her conclusions. (Tr. 821.)

The last medical advice opinion was provided by Dr. Melvin Clayton on March 20, 2008. (Tr. 864.) Dr. Clayton opined that Plaintiff was capable of performing a full range of medium work with no postural or environmental limitations. (Tr. 858-61.) Dr. Clayton's additional comments indicate that Plaintiff has a history of asthma with no current exacerbations. Additionally, he noted that Plaintiff was diagnosed with sarcoidosis in April 2004 and that Plaintiff's lungs were clear on January 31, 2008. (Tr. 864.)

The ALJ assigned little weight to Dr. Thigpen's, Dr. Robie's, and Dr. Veasey's opinions. The ALJ assigned significant weight to Dr. Clayton's opinion. Regarding Dr. Thigpen's opinion, the ALJ found that Dr. Thigpen had treated Plaintiff for a prolonged period of time but he was not a specialist, that his opinions were inconsistent with his findings, that Dr. Thigpen described Plaintiff as a histrionic person on one occasion, and that Dr. Thigpen relied on Plaintiff's subjective complaints rather than clinical findings. (Tr. 29-30.) The ALJ assigned little weight to Dr. Robie's and Dr. Veasey's opinion that Plaintiff avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation by referring to his step-two analysis in which the ALJ

7

concluded Plaintiff's sarcoidosis was no longer a severe impairment because on December 17, 2012, a chest x-ray showed no areas of concern or acute process and Ms. Sarah E. Blocher-Steiner, a physician's assistant, noted that Plaintiff's sarcoidosis was stable.[1]  The ALJ states, "Because her respiratory condition does not cause more than minimal functional limitations, pulmonary limitations are not necessary."  (Tr. 30.)  Lastly, the ALJ gave Dr. Clayton's opinion significant weight, stating that "the clinical findings and imaging studies of the claimant's back and knees do not support any significant abnormalities.  Treatment has been conservative with no surgical intervention, physical therapy, or consistent injection therapy.  As such, I find that a limitation to medium work is consistent with the longitudinal evidence of record."  (Tr. 30.)

The ALJ's weight determinations are not supported by substantial evidence.  The record indicates that Plaintiff has a long history of pulmonary issues.  Much of this medical history is inconsistent with the ALJ's determinations concerning Plaintiff's respiratory problems, and is not addressed in the ALJ's decision.  Plaintiff was diagnosed with sarcoidosis in late March to early April 2004.  (Tr. 358, 391.)  Before and after her diagnosis, extending from May 2001 to February 2011, Plaintiff had numerous chest x-rays showing "plate like atelectasis" in her lungs.  (Tr. 416-17, 418, 419, 421, 427, 428, 436, 438, 691, 703, 805, 844, 919, 922, 1103, 1026, 1073.)  On more than one occasion, abnormal chest x-rays showing plate like atelectasis accompanied findings that her lungs were "clear" upon physical examination.  (Tr. 703, 922, 1102.)  While "plate like atelectasis" was noted many times before Dr. Clayton's medical advice opinion was provided, there is no indication in his summary of the evidence that he took into account Plaintiff's

---

[1] Although not addressed by Plaintiff, the court finds it troubling that the ALJ found Plaintiff's testimony that she uses Albuterol and Singulair for her respiratory problems inconsistent with the record.  (Tr. 23.)  In the very same appointment record addressed by the ALJ, on December 17, 2012, and again on March 12, 2013, the record shows Plaintiff was using Albuterol.  (Tr. 1127, 1137.)

8

abnormal chest x-rays. Moreover, Plaintiff was noted to have "plate-like atelectasis" as late as February 16, 2011. (Tr. 1102.) After this x-ray, the record indicates only one more chest x-ray having been conducted on December 17, 2012. The treating physician's assistant did not review the x-ray but indicated it showed no acute process or areas of concern. (Tr. 1137.) Additionally, out of the numerous chest x-rays provided in the record, the ALJ only discussed the one provided on December 17, 2013. (Tr. 23.)

Furthermore, a pulmonary functional analysis post-dating Dr. Clayton's opinion is provided. (Tr. 1099-1100.) Addressing these results, the ALJ stated that such tests "demonstrated only minimal findings." (Tr. 23.) While the computerized interpretation stated there was "a minimal obstructive lung defect" and "mild restrictive lung defect," it also stated that "airway obstruction [was] confirmed" and "there [was] a moderate decrease in diffusing capacity" indicating it had changed by fourteen percent. (Tr. 1100.) Dr. Thigpen addressed the findings, stating that a decrease of fourteen percent in diffusion capacity indicated "significant interstitial lung disease." (Tr. 1098.) The ALJ does not explain how these represent minimal findings. Additionally, the above evidence contradicts Dr. Clayton's findings that Plaintiff does not require environmental limitations regarding her respiratory impairments.

Because of the lack of discussion regarding the ALJ's seemingly inconsistent determinations regarding the medical evidence pertaining to Plaintiff's respiratory limitations and the inconsistency between Dr. Clayton's medical opinion and the evidence of record, the ALJ's weight determination is not supported by substantial evidence. Accordingly, and the case must be remanded for further consideration.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings [DE #29] is GRANTED, Defendant's Motion for Judgment on the Pleadings [DE #31] is DENIED and the case is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration.

This 14th day of March 2016.

*Kimberly A. Swank*
KIMBERLY A. SWANK
United States Magistrate Judge